THE STATE *ex rel.* THE INDUSTRIAL HOME FOR GIRLS *Appellant*, v. PIKE COUNTY *et al.*

|144  275|
|153   47|
|144  275|
|178  ¹203|

Division One, May 24, 1898.

1. **Laws**: UNCONSTITUTIONAL. It is the duty of the courts to uphold a legislative act unless it plainly and clearly violates the Constitution, and if its language is susceptible of a meaning that will remove the objections to its validity such interpretation should be adopted.

2. ———: INDUSTRIAL HOME FOR GIRLS. STATUTE OF 1891: APPRENTICES. The act of 1891, concerning the class of girls that may be confided to the Industrial Home for Girls, which says "any female child may be bound as an apprentice to said Industrial Home for Girls as to any other master, and subject to the same provisions," is not unconstitutional. These words do not mean that *any* girl can be sent to such home as an apprentice at the expense of the county; but only such girls as the probate court, under section 373, of Revised Statutes 1889, may bind as apprentices. It is the duty of the State to care for unfortunate and dependent girls, and to reform them from vicious associations, and the Constitution is not violated by an act authorizing counties to pay their expenses at a reform school.

3. ———: AMENDMENT DURING PASSAGE. When the Constitution said "no bill shall be so amended in its passage through either house as to change its original purpose," it had reference to the consideration of a bill by the two houses before it becomes a law, and does not prohibit subsequent amendments thereto which may enlarge the purpose of the original bill.

*Appeal from Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

REVERSED AND REMANDED (*with directions*).

*Scott J. Miller* for appellant.

(1)   It devolves upon respondents to show that the law creating the Industrial Home is unconstitutional.

*State v. Addington,* 77 Mo. 110. (2) The legislature has the right under the police power of the State to create eleemosynary institutions; to protect society and to regulate the morals of infant criminals and make them better men and women—just as it has the right to maintain penitentiaries, jails and almshouses. This institution, to save fallen girls and those who have tendencies to go wrong, should appeal the more to the judiciary. (3) The prohibitory section of the Constitution does not apply to eleemosynary institutions. The intention of the legislature should be carried out by the courts, and the act must clearly appear to be unconstitutional, before the courts will declare it unconstitutional. *Hurd v. Chase,* 9 Barb. 266; Story on Court, sec. 451; *Brown v. Buzan,* 24 Ind. 197; *Phillips v. Railroad,* 86 Mo. 540; *Kelly v. Meek,* 87 Mo. 401; *State ex rel. v. Pond,* 93 Mo. 619; *Reform School v. Macon Co.;* 107 Mo. 291; *State v. Able,* 65 Mo. 362; *Stephens v. Bank,* 43 Mo. 390.

*George W. Emerson* and *Dalton Biggs* for respondents.

(1) If the last clause of section 5760, Revised Statutes 1889, as amended by the laws of 1891, page 164, is unconstitutional, yet it does not affect the rights of the State to establish and maintain eleemosynary institutions. (2) Where a provision of a statute is void in part the whole will not be declared void because of the unconstitutionality of a part. 131 Mo. 37; 120 Mo. 7. (3) The latter clause of section 5760, as amended by the laws of 1891, providing that "any female child may be bound as apprentice to said industrial home for girls as to any other master, and subject to the same provisions of law as are now or may hereafter be in force," and the whole of section

5769, as amended by the laws of 1891, are void because they conflict with section 47, article IV, Constitution of Missouri, and section 25, article IV, Constitution of Missouri.

WILLIAMS, J.—The State Industrial Home for Girls seeks to compel, by *mandamus*, the county court of Pike county to pay for the support, from May 31, 1894, to January 8, 1897, of an inmate of said institution sent there from said county. The sole ground for resisting payment is the alleged invalidity of the act of the legislature, under which the girl, for whose support the claim is presented, was "apprenticed" to said Industrial Home. We have, therefore, only to determine whether said act is constitutional. The circuit court decided this question in the negative, and held that the county was not liable. The case has been brought here by appeal.

The General Assembly, by act approved March 30, 1887 (Sess. Acts of 1887, p. 274), established the "State Industrial Home for Girls," and provided for its location, management and support. It was enacted, in section 12 of said statute, that every girl between seven and twenty years of age, convicted of "being a disorderly person or of any offense, not punishable by imprisonment for life," and "not deemed incorrigible" might be sentenced to said institution until she should become twenty-one years of age. This section was repealed in 1891 (Sess. Acts, 1891, p. 164), and a new section adopted in lieu thereof, which, in addition to a provision for the sentence to said Industrial Home of girls convicted of crime, as in the original act, also contained this clause, to wit: "Any female child may be bound as an apprentice to said Industrial Home for Girls as to any other master, and subject to the same

provisions of law as are now or may hereafter be in force.''

The next section requires the county to pay, quarterly in advance, to the superintendent of the home $75 per annum for the support of each individual sent there from such county as apprentice, or otherwise. The girl whose support is involved here, was not convicted of crime, but, at the age of fifteen years, was on May 31, 1894, duly apprenticed to said home by the probate judge of Pike county.

The petition was treated as the alternative writ, and defendants demurred thereto on the ground that ''the act establishing said home is unconstitutional.''

I.  It is claimed that the act violates section 47 of article IV of the Constitution, which prohibits the legislature from authorizing any county ''to lend its credit, or to grant public money or thing of value in aid of or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.''  We do not understand the respondents to contend that it is beyond the power of the legislature to establish such an institution or to provide for its support and maintenance from the public revenues.  It is the recognized duty of the State to care for the unfortunate and dependent classes, and taxes may properly be levied for such purpose. Hence, we have asylums for the insane, the blind, and the deaf and dumb, and also hospitals, poor houses and reformatories, supported at public expense.  Judge Cooley in his work on Taxation [2 Ed.], 125, says: ''He would be a bold man, who, in these days, should question the public right to make provision for these benevolent objects.''  It is also true that the *counties* have been and are required to pay, out of *their* funds, for the support of certain inmates of these institutions. ''The legislature has as much control over the revenue

of the counties as it has over that of the State, unless restrained by some provision of the Constitution." *State ex rel. v. Holladay*, 70 Mo. 137; *State ex rel. v. St. Louis Co. Ct.*, 34 Mo. 546.

The demurrer assigns as ground therefor that *the act establishing* the home is unconstitutional. The *argument* of respondents, however, only goes to the validity of the requirement in the act of 1891 above cited, that each county, having an inmate in said home *as an apprentice* or otherwise, shall pay a certain sum for her support; and the clause providing that "*any female* child may be bound as apprentice to said Industrial Home for Girls as to any other master and subject to the same provisions of law as are now or may hereafter be in force." It is said that this is broad enough to include *every* female child in the State, whether such child belongs to any of the classes to whom special protection and assistance from the public revenues may properly be extended or not. It is further claimed that the statute concerning "apprentices," to which the act of 1891 refers, empowers the father, and, in some instances the mother, to bind his or her child as an apprentice without the consent of any court or officer. It is argued therefore, that, if *any* female child may be bound under this act as an apprentice to said home by her father or mother, and the county required to pay for her support while there, such county may be made to take the place of the parents and support *all* of the female children within its borders, whether rich or poor and regardless of their condition. It is attempted to bring this act within the principle announced in the very able opinion of GANTT, C. J., in the so-called "Collateral Inheritance Tax Cases" (143 Mo. 287), where it is said: "Paternalism is a plant that should receive no nourishment upon the soil of Missouri."

Should this act, however, receive the broad construction placed upon it by respondents?

"A legislative intent to violate the Constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction." (Endlich on the Interpretation of Statutes, sec. 178.) It is our duty to uphold the act unless it plainly and clearly violates the fundamental law of the State, and, if its language is susceptible of a meaning that will remove the objections to its validity, such an interpretation should be adopted. *Milwaukee Industrial School v. Supervisors*, 22 Am. Rep. 702–711. "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." *U. S. v. Kirby*, 7 Wall. 482; *Bingham v. Birmingham*, 103 Mo. 345; *State v. Bulling*, 100 Mo. 87; *St. Joseph to use v. Landis*, 54 Mo. A. 315; Endlich on Interpretation of Statutes, p. 344.

If we examine the statutes we find that this Home is declared to be one of the eleemosynary institutions of the State. (R. S. 1889, sec. 5671.) Section 5762 requires a system of rules to be adopted for the purpose of making the home a *"reformatory* institution, where girls removed from *vicious associates and evil influences* may receive a careful physical, intellectual and moral training, participate in the enjoyment of a true home life, *be reformed* and *become* good domestic women, prudent in speech and conduct, cleanly, industrious and capable housekeepers." The entire act must be considered in attempting to arrive at its meaning. It is plainly apparent that this Home was not intended for any and all female children. The class designed

to be benefited by it is pointed out in the section quoted *supra*, so that no one need be mistaken in regard thereto. It will not be assumed that the legislature intended any such absurd consequence as opening the doors of this *reformatory* institution to any and every female child in the State, regardless of her condition or surroundings or the necessity for or propriety of sending her to such a home; or that the purpose was to empower *any* father to send his child there to be supported at public expense.

The language of the act of 1891 under consideration is broad, and it was evidently not intended to confine the inmates of the home to those convicted of crime as provided in the original act of 1887. There were others, who were charges upon the counties, and who were liable to vicious and degrading associations, to be cared for. Provision was made for their admission to this home.

While the act declares that *any* female child may be bound as an apprentice to the home as to any other master in the manner provided by law, yet, in construing *this* provision, the *other* sections of the act, declaring the purposes of the institution and showing plainly the girls for whom it was designed and who were to be admitted thereto, must not be overlooked. The entire act must be construed together. If then the statutes concerning "apprentices" is examined, it will be found that section 373, Revised Statutes 1889, designates the persons who may properly be bound as apprentices to a home of this character. This section is as follows: "When any poor child is or may be chargeable to the county, or shall beg for alms, or whose parents are or may be chargeable to the county, or shall beg for alms, or where the parents of such children are poor and the father an habitual drunkard, or, if there be no father when the mother

is of bad character or suffer her children to grow up in habits of idleness, without any visible means of obtaining an honest livelihood, it shall be lawful for the probate court to bind such child as an apprentice,'' and it is to *this* class, that the legislature evidently intended by the act of 1891 to extend the benefits of the Industrial Home.

When the two acts are read and construed together, we think the legislative intent may be easily ascertained, and that the general words used in the act of 1891 refer only to the person mentioned in the ''apprentice'' statute, who would be suitable subjects for said home as pointed out in the law establishing said institution.

It is legitimate to use the public funds for this purpose. Cooley on Tax. [2 Ed.], p. 125; *Milwaukee Industrial School v. Supervisors*, 22 Am. Rep. 702.

II. It is further claimed that section 25, of article IV, of the Constitution, is violated by the act under consideration. This section of the Constitution is as follows: ''No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose.'' It is said that the act of 1891 changed the purpose of the home as established by the act of 1887. The section of the Constitution quoted above has reference to the amendment of a bill during its consideration by the two houses of the General Assembly before it becomes a law. It does not attempt to prohibit a subsequent legislature from making any changes in a statute that may be deemed proper.

We find, in the abstract of the record, an agreement, ''that if the act of the legislature establishing the Industrial Home is constitutional the peremptory writ shall issue,'' and being of the opinion that this must be determined for the appellant, we reverse the

judgment and remand the case with directions to issue the peremptory writ as prayed, in which all the judges of this division concur.