**CITY OF JOPLIN, Missouri, a Municipal Corporation, Respondent,**

v.

**The JOPLIN WATER WORKS COMPANY, a Missouri Corporation, Appellant.**

No. 50507.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1965.

William H. Burden, Joplin, for respondent.

John W. Scott, Spencer, Scott & Dwyer, Joplin, for appellant.

HOUSER, Commissioner.

■■ Action in two counts by City of Joplin against The Joplin Water Works Company. Tried to the court without a jury Count I for a declaratory judgment was dismissed. Judgment was rendered for City on Count II for $48,336.84. City did not appeal from the judgment on either count. Company appealed from the order overruling its motion for new trial, a non-appealable order, but we will review the judgment on Count II on the theory that Company intended and in good faith attempted to appeal from a final judgment. State v. Kendrick, Mo.Sup., 383 S.W.2d 740 [1, 2]. We have jurisdiction since the amount in dispute, exclusive of costs, exceeds the sum of $15,000. Constitution of Missouri, Art. V, § 3, V.A.M.S.; § 477.040, V.A.M.S.

Tried upon the facts by the court without a jury we review the case on both the law and the evidence as in an equity case. The judgment is not to be set aside unless clearly erroneous. Supreme Court Rule 73.01; § 510.310(4), V.A.M.S.

On November 25, 1949 City Council passed Ordinance No. 20861, a licensing ordinance specially applicable to water suppliers, requiring payment to City of a quarter-annual license fee on or before the 30th days of January, April, July and October of each year, in the amount of 4% of gross receipts from the sale of water during the preceding 3-month period, and requiring a licensee to report under oath to the city commissioner of revenue, on forms prescribed by him, the information necessary to determine the amount of fee due for each quarter-annual period. From its effective date and in compliance with Ordinance No. 20861, hereinafter referred to as "the 4% ordinance," Company made and presented to the proper city officials affidavits and statements of gross receipts for each preceding quarter, computed the tax at 4%, and issued vouchers to City reciting payment of 4% of the gross receipts during the 3-month period "to comply with the terms of Ordinance No. 20861 passed by the City Council of Joplin, Missouri, on November 25, 1949." In response City issued quarter-annual licenses to Company for each subsequent three-months period to and through December 31, 1962, signed by the commissioner of revenue until the city adopted a city manager form of government in 1954, and signed thereafter by the director of finance, authorizing Company to carry on its business during a 3-month period. Each license issued stated the amount paid and that it was paid as "required by Ordinances of said City."

On March 13, 1951 City Council passed Ordinance No. 21204, a licensing ordinance generally applicable to approximately one hundred different occupations, trades, pursuits, businesses and vocations. Section 1 repealed 37 sections of Ordinance No. 17707 and all of Ordinance No. 21194 (the subject matter of these ordinances is not revealed) but did not repeal or mention the 4% ordinance. Section 2 provided as follows:

"Every person, firm, corporation, association, partnership, joint stock company or other entity whatsoever engaged in any occupation, trade, pursuit, business or vocation or in the keeping or maintaining of any institution, establishment, article or commodity specified in this ordinance shall procure and pay for a license for the privilege of engaging in same within the limits of this city, and the fee for such license shall be in the amount hereinafter set out, EXCEPT AS OTHERWISE PROVIDED IN OTHER ORDINANCES; *provided, however, that any portion of any other ordinance prescribing any license fee in conflict with the license fees fixed herein is hereby repealed.*"

We have italicized and capitalized the language of Section 2 which provoked this lawsuit. The capitalized language will be referred to as "the exception"; the italicized language as "the proviso." Section 5 contained a schedule of fees and a classification of occupations, including:

"*Water companies—5%* of annual gross receipts for last preceding calendar year, per year, with a minimum of $10,000.00 per year in any case."

We will refer to Ordinance No. 21204 as "the 5% ordinance."

On August 27, 1951 City Council passed Ordinance No. 21365, amending the 5% ordinance by repealing the proviso, and by adding to the reference to "merchants" in § 5 a provision excluding from total receipts amounts received from the sale of cigarettes, etc. Ordinance No. 21365 will be referred to as "the proviso-repealer ordinance."

After the effective dates of the 5% and proviso-repealer ordinances City and Company continued to operate on the 4% basis under the procedure provided for in the 4% ordinance, using the same forms of application, reports, computations, vouchers and license as they used before their enactment, the City accepting payments of

license fees computed on the basis of 4% (not 5%) of gross receipts.

In 1952, 1957 and 1960 Company filed with the public service commission applications for increases in water rates, introducing in evidence at each hearing the fact that it paid City 4% of gross receipts as a license fee. In determining the rates Company could charge the commission in each instance considered the 4% tax as Company's operating expense for municipal licensing. Although City appeared at all three hearings and was represented by counsel, City did not object to this evidence, or suggest a correction from a 4% to a 5% license tax as the proper basis for the fixing of rates to be charged water users in the future, or claim that City was entitled to a license tax based on 5% of gross receipts.

On November 1, 1960 City demanded from Company the payment of $51,668.11, calculated as the additional 1% license fee upon gross receipts from the effective date of the 5% ordinance to September 30, 1960. Company refused to pay.

On December 21, 1962 City Council passed Ordinance No. 24708, effective that date as an emergency ordinance, specifically repealing the 4% ordinance in its entirety, by number; specifically repealing the portion of § 5 of the 5% ordinance which read "Water companies—5% of annual gross receipts for last preceding calendar year, per year, with a minimum of $10,000.00 per year in any case," and repealing "all or any part of all ordinances relating to the licensing of water companies enacted prior hereto and in conflicting (sic) herewith passed prior to the effective date hereof." Then followed a re-enactment in haec verba of the language of the original 4% ordinance, except a license fee of 5% was imposed upon gross receipts instead of 4% and an annual minimum fee of $10,000 was prescribed, and except for a few inconsequential changes of language. The preamble of Ordinance No. 24708 recited the enactment in 1951 of the 5% ordinance; stated that Company contends that the proviso-repealer ordinance repealed and nullified the taxing provision of the 5% ordinance and "revived" the tax rate set out in the 4% ordinance; recited the refusal of Company to pay on the basis of more than 4% of its gross receipts; recited Company's contention that by accepting 4% since November 1949 to date and granting licenses during that period of time City is guilty of laches and is estopped from claiming any additional amount; related that a controversy existed between City and Company as to the amount of past due tax; and stated the desire of City Council "to eliminate any controversy" as to the percentage to apply to future sales, and the legislative intent of City Council "to establish a five percent rate of the gross sales with a minimum of $10,000.00 per year as a license fee for said [water] companies * * * without waiving any of its rights to collect the additional amount that the city claims is due it under the terms and conditions of certain provisions of Section 5" of the 5% ordinance. When Ordinance No. 24708 became effective, December 21, 1962, Company for the first time began to report, compute, and pay its license fees on the basis of 5% of gross receipts.

This suit was filed in one count for a declaratory judgment on November 22, 1961. On March 27, 1963 City filed an amended petition adding Count II on account, praying for $67,255, plus interest. Company's answer to Count II alleged that the 4% ordinance remained in force and effect from its effective date to December 21, 1962, unaffected by the 5% ordinance by reason of the ambiguous and contradictory nature of the exception and the proviso in its Section 2 and set up the defenses of laches, estoppel and limitations. City's reply denied the existence and applicability of the defenses of waiver, estoppel and limitations.

The court found for City, rejecting all defenses except that of limitations which

it sustained in part, whereby recovery of an additional 1% on gross receipts prior to five years preceding November 1, 1960, the date of demand for payment, was precluded.

■ Company's first point is that the court erred in determining that the 4% ordinance was repealed by the enactment of the 5% ordinance; that under proper application of the rules of construction the 4% ordinance continued in force and effect until specifically repealed by Ordinance No. 24708 on December 21, 1962.

We do not understand it to be the position of City that no construction is necessary. (City would hardly be in a position to make this claim, since City affirmatively alleged in its count for a declaratory judgment [allegations adopted and realleged in Count II now under review] that there is uncertainty "as to how each party is to proceed" and that it is necessary that the 4% and 5% ordinances and the proviso-repealer ordinance "be construed by this court to clarify same.") Conceding that § 2 of the 5% ordinance is not drawn as artfully as may be desirable, City contends that the exception therein contained is not applicable to Company; that the intent of City Council to establish a new 5% rate clearly appears, as evidenced by the proviso, which City says specifically repealed the 4% ordinance, and by the 5% rate prescribed in § 5; that Ordinance No. 21365 is nothing but a special ordinance dealing only with the licensing of cigarette vendors.

■ In determining whether the 5% ordinance repealed the 4% ordinance the court first looks to the 5% ordinance itself. The intent of the municipal legislative body "is to be found primarily in the language of the ordinance." 62 C.J.S. Municipal Corporations § 442, subpar. f(2), p. 844; McQuillin, Municipal Corporations, 3rd Ed., Vol. 6, § 20.45, p. 109. Section 1 expressly repealed all of Ordinance No. 21194 and parts of Ordinance No. 17707 but did not expressly repeal the 4% ordinance by number nor did it specifically refer to the 4% ordinance. Section 2 imposed a duty upon all named persons, corporations, etc. to procure and pay for a license for the privilege of engaging in business in the city and directs that "the fee for such license shall be in the amount hereinafter set out, EXCEPT AS OTHERWISE PROVIDED IN OTHER ORDINANCES; *provided, however, that any portion of any other ordinance prescribing any license fee in conflict with the license fees fixed herein is hereby repealed."*

■ Under the capitalized language the fee based upon 4% of gross receipts under the 4% ordinance would be excepted from the operation of the 5% ordinance, because the 4% ordinance is an "other" ordinance which "otherwise" provides. The capitalized language (the exception) thus is indicative of a legislative intent that the ordinance providing for a fee based upon 4% of gross receipts should remain in force and effect. Inconsistently, the italicized language (the proviso) is indicative of a legislative intent that that portion of the ordinance providing for a fee based upon 4% of gross receipts should be repealed, because it is a "portion of [another] ordinance prescribing [a] license fee in conflict with the [5%] license fee fixed" in the 5% ordinance. The exception and proviso thus are in irreconcilable conflict, incompatible, confusing and self-destructive. They render the 5% ordinance ambiguous insofar as water companies are concerned. While the general purview of the 5% ordinance, in this connection, is to fix the license fees of water companies on the basis of 5% of gross receipts, the exception stands in the way. It is the exception which injects the ambiguity. If the exception could be excised the ordinance would be rendered entirely harmonious. Acting on the presumption that the legislature never intends to enact an absurd law, incapable of being enforced, and on the principle that the reason of the law should prevail over the letter of the law, courts

on numerous occasions, confronted with ambiguous or contradictory language, have adopted a construction which modifies the literal meaning of the words, or in extreme cases have stricken out words or clauses regarded as improvidently inserted, in order to make all sections of a law harmonize with the plain intent or apparent purpose of the legislature.[1] Looking only at the two ordinances to ascertain the intention of City Council we would be justified in applying this rule, striking out the exception, and finding that the 4% ordinance had been repealed by implication, if not expressly by the proviso in the 5% ordinance. In cases of ambiguity and uncertainty in the language of an ordinance, however, the court may and should "consider extrinsic matters which tend to throw some light on the legislative intent." 62 C.J.S. Municipal Corporations § 442f (2), p. 844. There is an abundance of extrinsic evidence, which we cannot ignore, indicative of a legislative intent not to repeal the 4% ordinance; evidence which convinces us that the application of the rule would result in injustice.

We refer to the subsequent legislative history and the contemporaneous construction by City Council, its legal representatives, the officers in charge of the administration of the licensing ordinances, and Company over a period of many years.

"[I]t cannot be denied that one of the accepted canons of statutory construction permits and often requires an examination of the historical development of the legislation, including changes therein and related statutes." State ex rel. Klein v. Hughes, 351 Mo. 651, 173 S.W.2d 877, 879[3]. By

tracing the history of legislation on the subject the court endeavors " 'to ascertain the uniform and consistent purpose of the Legislature, or to discover how the policy of the Legislature with reference to the subject-matter has been changed or modified from time to time. With this purpose in view therefore it is proper to consider, * * * acts passed at prior and *subsequent* sessions, and even those which have been repealed.' " (Our italics.) State ex rel. Columbia Nat. Bank of Kansas City v. Davis, 314 Mo. 373, 284 S.W. 464, 470[7]. The subsequent legislative history of the 5% ordinance is illuminating. The 5% ordinance was amended about six months after it was passed. In construing amended ordinances both the old and the new ordinance, the mischief and the remedy, as well as the history of the amendment, and the amended ordinance as a whole, are to be considered. McQuillin, Municipal Corporations, 3rd Ed., Vol. 6, § 20.62, p. 147. The mischief in the 5% ordinance lay in the fact that the exception and proviso were inconsistent and mutually self-destructive. The remedy adopted by City Council (repeal of the proviso), apparently designed to cure the fault in the 5% ordinance, did not accomplish its purpose. A repeal of the exception would have remedied the mischief, for this would have eliminated the ambiguity and the intention to tax on the 5% and not on the 4% basis would have been clearly revealed. Instead of adopting this clear and unmistakable method of clearing up the confusion City Council *repealed the proviso,* thereby indicating an intention *not* to repeal portions of other ordinances prescribing license fees in con-

1. In re Tompkins' Estate, Mo.Sup., 341 S.W.2d 866, 872, 873; Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 11 S.W.2d 48, 53 [6]; State ex rel. Harvey v. Sheehan, 269 Mo. 421, 190 S.W. 864, 865; Gist v. Rackliffe-Gibson Const. Co., 224 Mo. 369, 123 S.W. 921, 927 [4]; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 12, 22 L.R.A.,N.S., 1045; State v. Moody, 202 Mo. 120, 100 S.W. 619, 620; Stubbs v. Mulholland, 168 Mo. 47, 67 S.W. 650, 658; Keene v. Wyatt, 160 Mo. 1, 60 S.W. 1037, 63 S.W. 116, 120; State v. Bixman, 162 Mo. 1, 62 S.W. 828, 836; State ex rel. State Industrial Home for Girls v. Pike County Court, 144 Mo. 275, 45 S.W. 1096, 1098; City of St. Louis v. Dorr, 145 Mo. 466, 41 S.W. 1094, 1098, 46 S.W. 976, 42 L.R.A. 686; Cole v. Skrainka, 105 Mo. 303, 16 S.W. 491, 492; Irvine v. Leyh, 102 Mo. 200, 14 S.W. 715, 16 S.W. 10, 11; Bingham v. Birmingham, 103 Mo. 345, 15 S.W. 533, 535.

flict with fees computed on the 5% basis. This action was consistent with an intention to continue the 4% rate in effect. In any review of the legislative history Ordinance No. 24708 must be taken into account. Its preamble recited that a controversy had developed. It stated the diametrically and unresolved contentions of the adversary parties and indicated clearly its purpose to settle the issue and remove all doubts as to the rate to be collected from and after December 21, 1962. It conclusively established City's intention to collect *future* fees on a 5% basis, but is of little or no value in determining City's intention in 1951, because it was passed after the lawsuit had been filed. Any declared intentions favorable to City or unfavorable to Company, made during the pendency of litigation on the issue, would be discounted as self-serving. It would be improper to draw the conclusion that the ordinance was a legislative recognition that in 1951 City Council had attempted but failed to repeal the 4% ordinance and that the 4% ordinance was still in effect. This for the reason that Ordinance No. 24708 very clearly indicates an intention to reserve and not prejudice City's right to collect the additional 1% claimed.

■ Although the contemporaneous construction adopted by the parties interested in the enforcement of the ordinances is not controlling or binding upon the courts it is entitled to great weight. McQuillin, Municipal Corporations, 3rd Ed., Vol. 6, § 20.45, p. 109; 62 C.J.S. Municipal Corporations § 442, subpar. i., p. 850; Automobile Gasoline Co. v. City of St. Louis, 326 Mo. 435, 32 S.W.2d 281, 283; State ex rel. Kansas City Ins. Agents' Ass'n v. Kansas City, 319 Mo. 386, 4 S.W.2d 427, 431[6]; State ex rel. Union Electric Light & Power Co. v. Baker, 316 Mo. 853, 293 S.W. 399, 404. "[A] construction placed upon [the ordinances] by the officers charged with their execution should be favored by the courts." City of Sedalia ex rel. Ferguson, City Treasurer v. Shell Petroleum Corp., 8 Cir., 81 F.2d 193, 197. The contemporaneous construction adopted by the parties between the effective date of the 4% ordinance and the passage of Ordinance No. 24708 (a period of ten or eleven years) and adhered to even after demand made in 1960 and after suit filed in 1961, strongly evidences an intention and recognition through the years that the 4% rate was in effect. The revenue officials, with full knowledge of the 5% ordinance, quarter after quarter over this long period, accepted fees and issued and certified licenses as in conformance with the ordinances based on 4% reports and calculations. That this was done with the acquiescence and consent of City Council must be inferred. The commissioner of finance was a member of the council. The silence and failure of counsel for City to speak up when Company turned in its licensing expense of operation on a 4% basis at the three public service commission hearings constituted a tacit approval, and acquiescence in the lower rate as the applicable rate.

Taking into consideration these extrinsic matters, all of which indicate a clear legislative intent contrary to that asserted by City in this litigation, we conclude and hold that while City Council attempted to raise the rate from 4% to 5% it failed in its purpose and that after the passage of the 5% ordinance and until the date of the passage of Ordinance No. 24708 it was the intention of City Council that the 4% ordinance remain in force and effect, and that Ordinance No. 20861 was not repealed until December 21, 1962.

The judgment on Count II is reversed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.