THE STATE, Appellant, v. MOODY.

Division Two, March 5, 1907.

1. **GAME AND FISH LAW OF 1905: Action for License Fees: State Proper Party.** The State in its own name is the proper party to sue to recover from county clerk balance collected on hunters' licenses issued under the Game and Fish Law of 1905.

2. ———: **License Fees: Amount Clerk Is Allowed to Retain.** Under the Game and Fish Law of 1905, county clerks and the license collector of St. Louis are allowed to collect but one dollar for each hunters' license issued, out of which they may retain the sum of fifteen cents, the balance to be paid into the State Treasury.

3. ———: ———: ———: **Rendering Sections Harmonious: Constitutional Law: Striking Words from Act.** Section 57 of the Game and Fish Law of 1905 provides that county clerks and the license collector of St. Louis "shall retain out of the moneys received for each license issued the sum of fifteen cents;" section 58 provides that "any person......may procure a license ......by paying to the clerk the sum of one dollar;" section 59 provides that "the license collector of the city of St. Louis shall correspond to the county clerks of the various counties of this State......He shall issue resident hunters' licenses and collect therefor a fee of $1.00 each, and for each license issued such license commissioner shall collect and retain for issuing the same a fee of fifteen cents." *Held,* that the provisions of section 59, permitting the license collector of St. Louis to collect one dollar for each license and to "collect and retain" fifteen cents for issuing same, while county clerks are permitted

State v. Moody.

to collect but one dollar, out of which they may retain the sum of fifteen cents, would render the law unconstitutional, as not being uniform in its operation; and since a legislative intent to violate the Constitution will never be assumed if the language of the statute can be satisfied by a contrary construction, the words "collect and" will be stricken out of section 59, as having been improvidently inserted, and when this is done the three sections will harmonize, and the license collector of St. Louis and the county clerks will be authorized to collect one dollar for each license issued, retain the sum of fifteen cents for issuing same, and turn the balance into the State Treasury.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*Herbert S. Hadley*, Attorney-General, and *Barnett & Barnett* for appellant.

(1) The State is a proper party plaintiff in this suit. The revenue sought to be recovered belongs to the State. It is required to be paid into the State Treasury. The fact that it is for the use of the game protection fund does not prevent this revenue from belonging to the State, and the State is the proper party to sue for it. State v. Ruby, 77 Mo. 610; State v. Bank, 45 Mo. 528; State v. Killian, 51 Mo. 80; 44 Am. Dig. (Century Ed.), sec. 178; Wolfee v. State, 79 Ala. 201; Gaston v. State, 88 Ala. 459; Brown v. State, 5 Colo. 496; Esley v. People of Illinois, 23 Kan. 510; Delafield v. State of Illinois, 2 Hill 159; State v. Delesdenier, 7 Tex. 76; State v. Thompson, 64 Tex. 690; State v. Travis County, 85 Tex. 435; State v. Burkeholder, 30 W. Va. 593. (2) The court erred in sustaining the demurrer to the petition. It stated a cause of action. It was the duty of the defendant as county clerk to collect one dollar for the use of the State on each license and to collect an additional fifteen cents from the applicant as compensation for the clerk.

Laws 1905, secs. 57 and 59, p. 168. The three sections pertaining to this subject must be read together as one section, and taking them together they clearly indicate that the same amount is to be collected from each applicant, namely, a dollar for the State and fifteen cents for the clerk. Laws 1905, secs. 57, 58, 59, pp. 168, 169.

*R. S. Matthews, Otho F. Matthews, R. W. Barrow* and *J. G. Sparrow* for respondent.

(1) The State is not the proper plaintiff. The statute provides that all suits shall be prosecuted by the game warden and that the money shall go to the State Treasurer. Could a judgment for costs be entered against the State in this proceeding, would this suit be a bar to suit by the officer entitled to receive the money? State ex rel. v. Crumb, 157 Mo. 545. (2) The petition fails to state a cause of action. The demurrer was properly sustained. The game law authorizes the clerk to collect $1 for the license and no more. Laws 1905, p. 168, secs. 57, 58. Where the wording of the statute is plain, it is the duty of the court to construe them according to the words used. City of Westport v. Mastin, 62 Mo. App. 647; State ex rel. v. Johnson, 132 Mo. 105. (3) Section 59 deals solely with the city of St. Louis and is intended for nothing else; reading sections 57 and 59 together it is made plain that the collector of St. Louis is not authorized to collect $1.15 at all, but that he shall "retain" his 15 cents and remit the balance to the State treasurer. It is the mistake of the construction of the game warden in claiming $1.15 that makes the law unconstitutional as to fees, if at all.

BURGESS, J.—This suit is brought by the State of Missouri against Nick M. Moody, clerk of the county court of Macon county, to recover a balance collected on hunters' licenses in said county, the allegation of the petition being that defendant had, out of the one

dollar on each license collected from hunters, paid only eighty-five cents to the State Treasurer, instead of one dollar; that said licenses are issued to hunters, and one dollar for the State revenue is paid to the clerk for each license issued, by virtue of an act of the General Assembly entitled, "An Act relating to the preservation, propagation and protection of game animals, birds and fish, creating the office of Game and Fish Warden, creating a game protection fund, and appropriating money therefrom," approved March 10, 1905. [Laws 1905, p. 158.]

Defendant demurred to the petition on the following grounds:

"First. Because said suit, as appears from the petition, is not brought in the name of the proper party plaintiff.

"Second. Because said petition wholly fails to state a cause of action.

"Third. Because, under the laws of the State of Missouri, defendant is only authorized to collect one dollar ($1) for hunting licenses, and to retain fifteen cents for compensation for issuing same, and to remit the remaining eighty-five cents to the State of Missouri.

"Fourth. Because on the face of the pleadings it fully appears that the defendant has complied with the law.

"Fifth. Because the law governing this case is unconstitutional."

The demurrer was sustained, and, plaintiff declining to plead further, judgment was rendered for defendant upon the demurrer, from which judgment plaintiff, after an unsuccessful motion for a new trial, appeals.

The first point presented for consideration upon this appeal is as to whether the suit is brought in the name of the proper party. Defendant contends that the suit should be prosecuted in the name of the game

warden; but under the act of March 10, 1905, ''creating the office of Game and Fish Warden,'' all moneys collected by way of license fees and by way of fines for violations of the law are required to be paid into the State Treasury and become part of the revenue of the State. The fact that the money so collected is for the use of the game protection fund does not prevent the State from controlling it, and the State is the proper party to sue therefor.

In the case of State v. Rubey, 77 Mo. 610, the right of the State to maintain an action for her own funds, after default made in paying same into the State Treasury, is clearly recognized. The same rule is announced in Wolffe v. State, 79 Ala. 201; Gaston v. State, 88 Ala. 459; Esley v. People of Illinois, 23 Kan. 510; Delafield v. State of Illinois, 2 Hill 159; State v. Delesdenier, 7 Tex. 76; State v. Thompson, 64 Tex. 690; State v. Travis County, 85 Tex. 435; State v. Burkeholder, 30 W. Va. 593.

In the case of Brown v. State, 5 Colo. 496, it is said: ''It is the accepted law that a State, as a political corporation, may maintain, in its corporate name and in its own courts, actions for the enforcement of its rights or the redress of its wrongs, independently of any statutory provision therefor. The right springs from the general principle that every person, whether natural or artificial, capable of making a contract or suffering wrong, may have an action to enforce the one and to redress the other.''

It is insisted by defendant that the demurrer was properly sustained because, under the law, the county clerks are to collect one dollar for each license issued, and out of that sum retain fifteen cents and pay the remaining eighty-five cents into the State Treasury.

Section 57 of the act, after providing that county clerks and the license collector of the city of St. Louis shall issue resident licenses, further provided that, ''such clerk and the license collector of the city of St.

Louis shall retain out of the moneys received for each license issued the sum of fifteen cents, which shall cover the swearing of the applicant to the affidavit herein referred to, and all other services under this act, and shall pay the balance to the State Treasurer on the first day of each month, and report to the State Game and Fish Warden the number of licenses issued and the amount of money remitted to the State Treasurer on the first day of each month.'' There is no ambiguity in this section of the statute, for it says, in plain and unequivocal language, that the county clerk and license collector of the city of St. Louis shall retain out of the moneys received for each license issued the sum of fifteen cents, which shall cover the swearing of the applicant to the affidavit and all other services under the act, and shall pay the balance to the State Treasurer. It will, however, be observed that no provision is made by this section for the payment of the license fee; but this is provided for by section 58, as follows:

''Any person who has been a bona fide resident of this State for six months then last past may procure a license for himself or herself by filing his (or her) affidavit with the clerk of the county where he or she resides . . . paying to the said clerk the sum of one dollar.''

Section 59 of said act provides that, ''for the purpose of carrying out the provisions of this act, the license collector of the city of St. Louis shall correspond to the county clerks of the various counties of this State. . . . He shall issue *resident* hunters' licenses and collect therefor a fee of $1 each, and for each license issued such license commissioner shall *collect and* retain for issuing the same a fee of fifteen cents.''

The only express provision in the act for the payment of license fees in the counties of the State is in section 58, and that provides for the payment of only one dollar to the clerk of the county, no provision being

made therein for the payment of fees for taking and
filing the affidavit of the applicant for a hunter's
license. This, however, is provided for by section 57,
as has been seen.

Plaintiff insists that as it is provided by said sec-
tion 59 that the license collector of St. Louis corre-
sponds, for the purposes of the act, to the county clerks
of the various counties, they are, therefore, on the same
level, have the same functions to perform, get the same
fee and collect it in the same manner; also, that sections
57, 58 and 59 must be read together as one section, and
that, taking them together, they clearly indicate that
the same amount is to be collected from each applicant
for a license, namely, a dollar for the State, and fifteen
cents for the clerk.

It was evidently the purpose of the lawmakers to
make the law under consideration applicable alike to all
citizens of the State, or, in other words, uniform in its
application. The license of the resident of the city of
St. Louis entitles him to the same privileges as does the
license issued by the clerk of a county to a resident of
such county; and the law should be so construed, if by
any fair construction this can be done. A law not uni-
form with respect to the same class of subjects would
be unconstitutional. [Sec. 3, art. 10, State Constitu-
tion.]

While we think that sections 57, 58 and 59 of the
act should be construed together, we do not think the
construction contended for by plaintiff the proper one,
because, as we have said, by the provisions of section
57, the county clerks and license collector of the city of
St. Louis are entitled to retain out of the moneys re-
ceived for each license the sum of fifteen cents. Thus,
by the express provisions of this section, county clerks
and the license collector of the city of St. Louis are
entitled to retain out of the license fee collected by
them upon each license issued the sum of fifteen cents;
and there is no provision in the act to the contrary.

Conceding that, for the purpose of carrying out the provisions of the act, the license collector of the city of St. Louis shall correspond to the county clerks of the various counties, as provided by section 59, if we eliminate from that section the words ''collect and,'' in the third sentence, which words seem to indicate that the license collector of St. Louis is entitled to collect and retain fifteen cents, exclusive of the license fee, said sentence would read as follows: ''He shall issue resident hunters' licenses and collect therefor a fee of one dollar each, and for each license issued such license commissioner shall retain for issuing the same a fee of fifteen cents.'' By such elimination and construction this section will be in perfect harmony with the other two; and all three, taken and considered together, will make the law uniform in its operation, as was evidently the intention of the Legislature. It was certainly not the intention of the Legislature that a resident of the city of St. Louis should pay more for a hunter's license applied for and taken out in that city than should a resident of a county for such license applied for and obtained in such county; for such a law would be clearly unconstitutional. ''A legislative intent to violate the Constitution is never to be assumed, if the language of the statute can be satisfied by a contrary construction.'' [Endlich on Interpretation of Statutes, sec. 178.] ''It is our duty to uphold the act unless it plainly and clearly violates the fundamental law of the State, and, if its language is susceptible of a meaning that will remove the objections to its validity, such an interpretation should be adopted.'' [State ex rel. v. Pike County, 144 Mo. 275; Milwaukee Industrial School v. Supervisor, 22 Am. Rep. 702-711.]

By striking out the words indicated, as having been improvidently inserted, the sections under consideration are readily understood, and of practical effect. ''In pursuing this course we do but follow well-approved precedents, and allow the reason of the law to

prevail over the letter; 'for the letter killeth, but the spirit maketh alive.'" [Bingham v. Birmingham, 103 Mo. 345; State ex rel. v. Pike County, supra; St. Louis v. Dorr, 145 Mo. 466.] In Bingham v. Birmingham, supra, eight words were stricken out of a statute in order to conform to the plain intent of the Legislature to make all sections of the law harmonize.

For the reasons stated the judgment should be affirmed. It is so ordered.

All concur.