THE STATE ex rel. JESSE W. BARRETT, Attorney-
    General, v. BOECKLER LUMBER COMPANY et
    al.

In Banc, January 4, 1924.

1. **CONSTITUTIONAL LAW: Authority and Duty of Courts.** Under
   our system of constitutional law and government the final duty
   and responsibility of deciding whether a legislative act is in con-

flict with the Constitution rest with the courts. When the validity of a given act is directly drawn in question in a pending concrete case, as determinative of the rights of the individual citizen, the court cannot evade the duty of passing on its constitutionality.

2. ————: **Fees of Attorney-General: Invalid Statute.** Section 9675, Revised Statutes 1919, providing that the Attorney-General for his services in prosecuting pools, trusts and combinations in restraint of trade "shall, in addition to the salary now allowed by law, be allowed a fee in each case equal in amount to one-fourth of the fine, penalty or forfeiture imposed, to be taxed, collected and paid in the same manner as ordinary court costs are now taxed, collected and disbursed," is in irreconcilable conflict with Section 24 of Article V of the Constitution declaring that the Attorney-General and other officers named in the article "shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not, after the expiration of the terms of those in office at the adoption of the Constitution, receive to their own use any fees, costs, perquisites or other compensation;" and although the salary of the Attorney-General is wholly inadequate, and the legislative purpose of the statute was plainly to provide an adequate compensation for his services and to stimulate his activity in the enforcement of the Anti-Trust Statute, said Section 9675 is invalid, and he is not entitled to receive one-fourth of the fines imposed by the court upon and collected from corporations, adjudged to have entered into an unlawful combination in restraint of trade, in a proceeding which he instituted and has successfully prosecuted.

3. ————: ————: ————: **Evils to be Cured: Depletion of Treasury.** The depletion of the State Treasury was not the only evil sought to be cured by the constitutional provision declaring that certain state officers "shall not receive to their own use any fees, costs, perquisites of office, or other compensation." Its obvious intention was to entirely wipe out the fee system as perquisites of office or a method of increasing the "compensation" of the officers named, and to place their compensation on a strict salary basis.

4. ————: ————: **Duties Prescribed by Law.** The duties imposed by the statute upon the Attorney-General pertaining to the prosecution of trusts and combinations in restraint of trade are not so "unusual and extraordinary" that they cannot be said to be incident to the office of Attorney-General. The Constitution (Sec. 1, Art. V ) says that he shall receive a salary for his services and that he shall perform such duties "as may be prescribed by law," and if the laws imposed upon him duties which were not incident and do not pertain to his office as Attorney-General a statute allowing him extra compensation for the performance of such duties would

be valid. But the office of Attorney-General is clothed, in addition to the duties expressly defined by statute, with all the powers pertaining thereto at common law, which were so varied and numerous that they have never been specifically enumerated, but among them was the power, by information, to bring certain classes of persons accused of crimes and misdemeanors to trial; and if the power and duty which the Anti-Trust Statute purports to confer upon the Attorney-General are not identical with powers and duties which he already possessed at common law; they are at least of the same general character, and therefore fall within the scope of the services which "may be prescribed by law," and for the performance of which he shall be allowed a salary and no other compensation of any kind or character.

5. ———: ———: **Payable into State Treasury: Purpose Foreign to Enactment.** The court cannot by construction give to a statute an effect which is wholly foreign to the purpose for which it was enacted. The statute declaring that the Attorney-General shall receive a fee equal to one-fourth of the fines imposed upon corporations convicted of having entered into an unlawful combination in restraint of trade, to be taxed as costs, being invalid, the court cannot direct that the fee be collected anyhow and be turned into the State Treasury.

## Motion to Tax Fee of Attorney-General.

MOTION OVERRULED.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for relator; *Merrill E. Otis* of counsel.

(1) It has been intimated that Section 9675 violates Section 24 of Article V of the Constitution. Only a superficial view of this section, however, warrants the conclusion that it prohibits such a fee for such services as is contemplated by Section 9675. When the constitutional provision is construed in the light of numerous decisions of this court in cases involving the same principles, and in the light of the purpose of the provision, as that purpose has been repeatedly explained in the decisions of this court, it is clear that this constitutional

provision does not and never was intended to prohibit a fee of the character allowed by this statute. (2) It is suggested also by the Attorney-General that in no event can the respondents escape the payment of the fee fixed by law. The disposition of the fee when paid is the only question upon which the constitutional provision referred to might conceivably have a bearing, and even if there were some question as to the Attorney-General's right to retain the fee for his own use the respondents would still be required to pay the amount involved.

*Conway Elder* for respondent Philip Gruner & Bros. Lumber Company.

(1) The Attorney-General for support of his motion relies upon Section 9675, which on its face allows him a fee equal to one-fourth of the fine or penalty imposed. This section must be construed in the light of Section 24, Article V, of the Constitution of Missouri. The intent of Section 24 is beyond question. The language of the inhibition is clear and unequivocal. It is in its effect negative and prohibitory. It embraces fees and compensation of every kind and character, whether received by virtue of ostensible or actual statutory authority or otherwise. And any statute running counter to the constitutional interdiction must of necessity fail. Section 9675 is therefore a nullity and void. (2) It may possibly be urged that State ex rel. McGrath v. Walker, 97 Mo. 162, holding that Section 24 does not prohibit the reception by the Attorney-General and other state officers of compensation in addition to their salaries for services rendered as members of the State Board of Equalization, gives countenance to the additional fee moved for in the instant case. However, a perusal of the opinion in that case shows that it is primarily predicated upon the duty imposed upon certain of the state officers by Section 18 of Article X of the Constitution to "adjust and equalize the valuation of real and personal property among the several counties in the State." The

further consideration entering into the ruling in that case was that it was thought the constitutional inhibition should not be construed as extending to ''compensation for services rendered in another and distinct department of public service.'' This is likewise the theory which underlies cases like State ex rel. v. Sheehan, 269 Mo. 421, and Cunningham v. Current River Ry. Co., 165 Mo. 270, upholding the constitutionality of laws enjoining new and additional duties. In the case at bar, however, the duty imposed upon the Attorney-General to prosecute violations of the anti-trust law, is consonant with and a part of the regular duties pertaining to his office. There is nothing, except possibly the labor and issues involved, which distinguishes such prosecutions from other prosecutions which it is his duty to pursue. And the value of the services rendered does not enter into a consideration of the question. State ex rel. v. Walbridge, 153 Mo. 194, 203; Bates v. St. Louis, 153 Mo. 18. By Section 1 of Article V of the Constitution the duties enjoined upon him are ''such duties as may be prescribed by law.'' By Section 9675 he is obligated to enforce every law ''relating to pools, trusts, conspiracies, discriminations and unlawful combinations in restraint of trade by appropriate actions in courts of competent jurisdiction.'' By Section 24 of Article V of the Constitution his salary is limited to that ''established by law'' with the further specific mandate that he shall receive no other fees or compensation. By Sections 692 and 10977, R. S. 1919, his salary is established at ''three thousand dollars per year''—nothing more and nothing less. He therefore cannot avail himself of the additional fee given by Section 9675, R. S. 1919. (3) Even though it should be held that Section 9675, R. S. 1919, is constitutional, nevertheless, the concluding provision of Section 24, Article V of the Constitution that ''all fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the State Treasury,'' precludes the payment to the

Attorney-General, for his own use, of the fee claimed herein. Under the constitutional mandate it is payable into the State Treasury. And regardless of the constitutional injunction, the fee sought to be collected, if allowed, would partake of the nature of an additional fine or penalty levied against respondents and as such would be payable into the State Treasury.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for relator, in reply; *Merrill E. Otis* of counsel.

(1) The statute provides for the fee asked by the Attorney-General in his motion filed herein. Sec. 9675, R. S. 1919. (2) Sec. 9675 (as in the case of every statute) is presumed valid until it is demonstrated beyond a reasonable doubt that it violates some provision of the Constitution. Forgrave v. Buchanan County, 282 Mo. 609; State ex rel. v. Sheehan, 269 Mo. 427; Pitman v. Drabelle, 267 Mo. 84. (3) Sec. 9675 does not violate Section 24 of Article V of the Constitution, which provides, in substance, (among other things) that the Attorney-General shall receive for his services a salary which shall not be increased during his term and that he shall not receive to his own use any fees, etc. (a) A constitutional provision governing the compensation of public officials and the methods of such compensation is to be liberally construed, so as not unreasonably to restrict the power of the Legislature to adjust such compensation to changing conditions in the cost of living, changing standards of remuneration for like services in private life, and the necessary enlargement of official duties which accompanies growth in population and the consequent increasing complexity of government. This liberality is evidenced not only by the decisions of the courts, but by legislative construction of the constitutional regulations as evidenced in numerous statutory enactments. (b) Thus, in the face of the letter of the constitution prohibiting any increase in compensation during the term of an incumbent, laws

increasing compensation have always (in Missouri) been sustained where they purport at the same time to increase duties. State ex rel. v. Sheehan, 269 Mo. 429; Cunningham v. Railroad Co., 165 Mo. 270. (c) Thus, in the face of the letter of the constitutional provision (Sec. 24, Art. V) that the executive officers of the State shall receive (no) "other compensation" than their salaries, this court, reversing an earlier ruling, State ex rel. v. Holladay, 67 Mo. 64, has held that they could receive "other compensation" as members of "ex officio boards." State ex rel. v. Walker, 97 Mo. 162. (d) Thus, presumably upon the authority of State ex rel. v. Walker, the Legislature time after time has increased the compensation of state officers, both executive and judicial, by creating boards, commissions, etc., of which such state officers are made ex officio members, such newly created boards, commissions, etc., being often patent legal fictions. No question has been raised touching the validity of increases in compensation achieved by this method. The only real, as opposed to fictitious, justification for the construction thus placed by the Legislature upon the constitutional restrictions is the rule of liberal construction in favor of flexibility of salary adjustments to meet changing economic conditions. (e) Thus, in the face of the letter of the Constitution (Sec. 24, Art. V) that the Governor (as one of the officers mentioned) shall not have, in addition to his salary, "any perquisites of office" no question has been raised concerning the provision of a "mansion" for him and his family, with liberal appropriations for its upkeep—a most substantial "perquisite of office." (4) In Missouri it is the settled practice in construing a constitutional provision regulating the compensation of public officials first to ascertain what evil or evils the particular provision was designed to obviate and then to limit the application of the provision to such matters as may be said unmistakably to fall within the scope of that evil or those evils. That, of course, is but a statement of the general rule of constitutional construction applicable, to

a greater or less extent, to all constitutional provisions, but particularly applicable to provisions regulating compensation of public officers by reason of the rule of liberal construction of such provisions referred to under the preceding point.    State ex rel. v. Ranson, 73 Mo. 89; State ex rel. v. Walker, 97 Mo. 164; 12 C. J. 710; 6 Am. & Eng. Ency. Law, p. 930.    (a)    The prime question is, what was the situation relating to salaries and fees which Section 24 was designed to improve and correct? We know exactly what that situation was from an inspection of the laws governing salaries and fees prior to 1875.    We can reasonably assume that the constitutional provision was specifically aimed at the obvious evils incident to the situation as thus made clear and we can say with certainty that, whatever might have been the specific evils the Constitution-makers had in mind they intended only to strike at what was in the pre-existing situation and did not intend to prohibit something that was not only not in that situation but of a wholly different nature from anything that was in that situation.    Whatever might be outside the scope of the evil it was sought to remedy, was not intended to be affected by the remedy devised.    Authorities supra; Salary of Attorney-General prior to 1875, see Wagner's Statutes, p. 1234; Fees of Attorney-General prior to 1875, see Wagner's Statutes, p. 619.    (5)    An anti-trust prosecution initiated and conducted to final judgment by the Attorney-General is a service unlike any service of that officer prior to 1875 and differing in nature from any service which he was then required to render or which he was required to render at the time his salary was fixed by law.    The contingent fee provided for this new and extraordinary service was unlike any fee allowed for any service to the Attorney-General prior to 1875 and it differs in nature from any such fee.    It follows that this fee falls wholly outside the scope of the evil sought to be obviated by Section 24 and is not, therefore, within the prohibition of that section.    (a)    The anti-trust

statutes were not enacted until long after 1875. (b) They impose upon the Attorney-General the duty of himself initiating and personally conducting prosecutions of great proportions. His connection with prosecutions of this character is primary rather than, as in the case of his usual duties, secondary only (advisory merely or beginning only after judgment below). There is a fundamental distinction between this duty and the ordinary, the usual, the historic (in Missouri) duties of the office. (c) The extraordinary and unusual nature of the Attorney-General's duty under the anti-trust statutes, at least in the estimation of the Legislature, conclusively appears from the requirement that he shall finish a prosecution of this kind even after his term of office. Sec. 9660, R. S. 1919. (d) In reality, for the purpose of enforcing these statutes, the Attorney-General is made *ex officio* State Prosecutor of Trusts and Combines (and might easily have been so called). (e) The .word "fees" as used in this constitutional provision refers only to the kind of "fees" then paid, that is, fixed and certain fees paid out of the State Treasury or by a person for whom a service is rendered, but this is a contingent fee, not paid out of the treasury nor by one receiving a service. The distinctions are radical. (f) Not only the pre-existing legislation but the context shows that the constitutional provision refers to "fees" such as were then being paid and such as could by reason of their nature be paid in advance, i. e., fixed and certain rather than contingent fees.

*Richard L. Goode, Carter, Nortoni & Jones, Wilfley, Williams, McIntyre, Hensley & Nelson* and *Arthur V. Lashly* for other respondents.

(1) The intention of the framers of the Constitution and the purpose to be achieved by Section 24 are the main guide in the attempt to ascertain the meaning of the provision, and its bearing upon the .statute or statutes relied upon by the Attorney-General in his mo-

tion for a fee. The language of the provision is so plain that there can be no difficulty in determining the intention of the framers and the purpose they had in view. The intention was to place the compensation of the executive officers named in the article, of whom the Attorney-General is one, upon a salary basis exclusively; to prevent the allowance of any compensation to those officers in any other mode than by salary to be established by law; to exclude the right to any fees, costs, perquisites of office or other compensation for the performance of their official duties. The section looked to the future and to possible laws that might thereafter be enacted, providing for the payment to those officers of fees for services, and declared that any fee that might be thereafter made payable to them by law should be paid in advance into the State Treasury. (2) We call the attention of the court to the fact that Section 24 of Article V, quoted above, differs radically from Section 8 of Article XIV; the latter section says: ''The compensation or fees of no state, county or municipal officer shall be increased during his term of office,'' etc. The latter section does not place the compensation of officers on a salary basis exclusively. So far as that section is concerned, the compensation may be either by way of salary or fees, but in either event the compensation cannot be increased during an incumbent's term. Under Section 24, Article V, compensation of the officers mentioned in the article must be a salary only. Compensation by way of fees, costs and perquisites of office or in any other mode, is absolutely prohibited. It results, therefore, that the Legislature has no power to raise the salary of an Attorney-General or other executive officer during his term, but may increase the salary to be paid to subsequent incumbents. But the Legislature cannot provide for compensation to those officers for the performance of any service incident to their respective offices by way of fees, etc., and this is true as regards not only the incumbent of the office at the time

such a law is passed, but as to any future incumbent. (3) To leave no doubt that it was the aim of said section to place the compensation of the executive officers mentioned in the article on the sole basis of salaries, the latter part of the section proceeded in the most positive language to preclude the receipt by them for their use, of any fees, costs, etc. It is obvious that the allowance provided for by either of the sections comes squarely within the inhibition both of the words and of the spirit of said Section 24 of the Constitution. This is true, whether the allowance is called a "fee," "costs," "perquisites of office" or "other compensation." It is, by the very words of the statutes, an allowance to the "Attorney-General for his services . . . in addition to the salary now allowed by law." It is demanded, and, if awarded, must be received by him "to his own use," for the statute does not attempt to confer the power to award it except as compensation to him. (4) The award, therefore, would be directly in the teeth of the constitutional inhibition, and this is so whether it be paid in advance into the treasury of the State and then disbursed to him or collected and paid to him directly as costs are collected and paid, as the statute provides, for the statute says the fee shall "be taxed, collected and paid in the same manner as ordinary court costs are now taxed, collected and disbursed." Court costs are not paid into the treasury in advance; they are paid to the persons entitled to them. That provision of the section of the statutes (namely, that the fee, when allowed, shall be taxed, collected and disbursed as court costs are) demonstrates beyond peradventure that the Legislature had no purpose in providing for such fees to Attorney-Generals, to replenish the State Treasury, but intended solely to reward the Attorney-General for a service performed by him as Attorney-General, over and above his salary as established by law, which is exactly what the Constitution says shall not be done. The statutes in question con-

tain no intimation that the fee is to be paid in advance into the State Treasury, or is to be taxed for any other purpose than as additional compensation to the Attorney-General. (6) The prosecution of cases for violation of the anti-trust laws has been a duty imposed on the Attorney-General from the first enactment of such laws. They were not newly imposed by the Act of 1917, which first provided for fees to the Attorney-General for such prosecutions. The duty of conducting such prosecutions was required of the Attorney-General by the Laws 1907, page 374. (7) It may be argued that the statute, even if unconstitutional in providing for a fee as additional compensation to the Attorney-General, is not unconstitutional in providing for a fee, that the fee may be collected and paid into the State Treasury. Possibly if the Legislature had intended to assess a fee to be paid into the State Treasury and had so enacted, there would be something in this argument, though we think even then it would be fallacious, because the fee could not be ascertained and paid in advance of the litigation into the treasury. But the statutes in question not only indicate no intention to have a fee paid to the State, but absolutely exclude that interpretation. It is plain the Legislature only thought of stimulating the Attorney-General to activity in anti-trust prosecutions by the prospect of additional compensation beyond his salary, in the form of fees. Moreover, the statutes provide that this fee is not to be paid into the treasury, but is to be taxed, collected and paid in the same manner as ordinary court costs are "now taxed, collected and disbursed." There is not the slightest intimation in that language that this so-called fee is to go into the treasury. The second answer to the foregoing argument is that to allow a fee which is not to go to the Attorney-General, but into the State Treasury, would not be to allow a fee at all. It would simply be an additional fine imposed on the respondents over and above the amount of punishment the court has found their alleged offense

State ex rel. Barrett v. Boeckler Lumber Co.

deserved. · (8)   If the fee the AttorneyGeneral demands
is not to be received by him to his own use, it is no "fee"
within any adjudicated meaning of that word.  The
word has a settled and age-old technical meaning; so
have the words, "costs," "perquisites of office" and
"other compensation."   "Fees," as used in the con-
stitutional clause in question and in the statutes in ques-
tion, mean the compensation allowed by law for services
performed by one in the discharge of official duties.  Cal-
laway County v. Henderson, 119 Mo. 32, 39; Finley v.
Territory, 120 Okla. 671; Commonwealth v. Mann, 168
Pa. 290; Ellis Co. v. Thompson, 95 Tex. 22; 1st Burrill
Law Dic., p. 447; 1st Bouvier Law Dic., p. 577.  "Costs"
means the sum of charges allowed by law for services and
expenses earned or paid in legal proceedings.  St. Louis
v. Mentz, 107 Mo. 611; Bennett v. Korth, 27 Wis. 235.
The words "perquisites of office" mean something earned
or gained by an official beyond his regular salary.  Wren
v. Luzerne Co., 8 Pa. Co. Ct. 23; Cantling v. Ry. Co., 54
Mo. 355; Vansant v. State,· 96 Md. 110; Callaway Co.
v. Henderson, 119 Mo. 32.  (10)   No officer is entitled to
any fee not expressly authorized by statute, and the
statute relied on must be strictly construed and must be
constitutional.  Shed v. Railway Co., 67 Mo. 687; Wil-
liams v. Chariton Co., 85 Mo. 645; State ex rel. v. Wof-
ford, 160 Mo. 220; State ex rel. v. McCracken, 60 Mo.
App. 650; Holeman v. Macon, 155 Mo. App. 398.

RAGLAND, J.—Respondents having been found
guilty of violating the statute relating to pools, trusts,
conspiracies, discriminations and unlawful combinations
in restraint of trade, and having had fines aggregating
the sum of $96,000 imposed upon them for such violation
the relator files his motion asking that the Attorney-
General be allowed a fee equal to one-fourth of the fines
so imposed, and that the same be taxed as costs against
the respondents, all in accordance with the provisions of
Section 9675, Revised Statutes 1919.  Respondents op-

pose the motion on the ground that the statute purporting to authorize the allowance of such fee is invalid, because repugnant to Section 24 of Article V of the Constitution.

Said Section 9675 is as follows:

"It shall be the duty of the attorney-general to enforce the provisions of chapter 88, R. S. 1919, and amendments thereto, and every other law relating to pools, trusts, conspiracies, discriminations and unlawful combinations in restraint of trade by appropriate actions in courts of competent jurisdiction. In all prosecutions under chapter 88, R. S. 1919, and amendments thereto, or any other law concerning pools, trusts, conspiracies, discriminations and unlawful combinations, the attorney-general for his services shall, in addition to the salary now allowed by law, be allowed a fee in each case equal in amount to one-fourth of the fine, penalty or forfeiture imposed, to be taxed, collected and paid in the same manner as ordinary court costs are now taxed, collected and disbursed."

The Attorney-General's salary is $3,000; it was fixed many years ago. Since that time the duties of the office have increased enormously. At the present time his is the greatest law office in the State. No other equals it in respect to the volume and magnitude of the matters disposed of, and the number and complexity of the legal questions presented for solution. As a renumeration for the services required of the Attorney-General the salary is wholly inadequate. This fact is generally conceded. In the enactment of the section just quoted the legislative purpose is plain; it is to increase the compensation of the Attorney-General and to stimulate his activity in the enforcement of the Anti-Trust Statute. The direction, that an amount equal to one-fourth of the fine, penalty or forfeiture imposed upon one adjudged guilty of violating the anti-trust law be allowed the Attorney-General as a fee for his services, and shall be taxed, collected, paid and disbursed as ordinary court

costs, is explicit and mandatory and leaves no room for the exercise of discretion on the part of the court; it must be obeyed, if the enactment embodying it is valid. On the other hand, if the allowance of such a fee is within the prohibition of the constitutional provision referred to, it cannot be allowed, however desirous we might be to give effect to the legislative purpose, or to aid the Attorney-General in availing himself of the statutory means provided to give him a compensation which in some measure comports with the value of the services he is rendering the State with conspicuous ability. That the Constitution is binding upon all departments of the state government, the legislative as well as the judicial, is a commonplace. And while it is assumed, as it must be, that the Legislature, in the exercise of its own wisdom and patriotism, does not in any of its acts purpose to transgress constitutional limitations, yet, under our system of constitutional law and government, the final duty and responsibility of deciding whether a legislative act is in conflict with the paramount law rests with the courts. When the validity of a given act is directly drawn in question in a concrete case, as determinative of the rights of the individual citizen, the court cannot, if it would, evade the duty of passing on its constitutionality.

Section 24 of Article V of the Constitution is as follows:

"The officers named in this article shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not, after the expiration of the terms of those in office at the adoption of the Constitution, receive to their own use any fees, costs, perquisites of office, or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the State Treasury."

The officers named in Article V are the executive officers of the State, among whom is the Attorney-General. Substituting "Attorney-General" for the "officers named," etc., Section 24 of the Article reads: "The Attorney-General shall receive for his services a salary to be established by law . . .; and he shall not . . . receive to his own use any fees, costs, perquisites of office, or other compensation . . . ." In the face of this positive prohibition the statute provides that "the Attorney-General for his services" (in prosecutions under the anti-trust law) "shall, in addition to the salary now allowed by law, be allowed a fee in each case . . . to be taxed, collected and paid in the same manner as ordinary court costs are now taxed, collected and disbursed." Giving to the language of each its plain and ordinary meaning, the constitutional provision and the statute present irreconcilable conflict.

Relator seems to concede that if the plain language —"the letter"—of the Constitution is to be given effect, then the fee he seeks to have taxed cannot be allowed. To avoid this seeming *impasse* he invokes a rule of construction which places the main emphasis on the mischiefs to be remedied or guarded against by a constitutional provision and then restricts the natural and literal significance of its words so that they operate merely to obviate the evils against which the provision is directed, but do nothing more. With this as his major premise relator endeavors to show that the fee provided for by said Section 9675 is not within the mischief sought to be remedied by the constitutional provision and consequently not within its prohibition.

At the time of the adoption of the present Constitution the Attorney-General was allowed, as now, a salary of $3000, and in addition thereto certain designated fees for his appearances in criminal cases in this court. These fees were payable out of the State Treasury when they were not collectible from the defendant. The Secretary of State was also allowed fees, in addition to a sal-

ary, for certain services, such as affixing the great seal, making copies of the records of his office, authenticating them, etc. The obtention of these fees, according to relator, engendered certain evils which the framers of the Constitution sought to obviate. He says:

"The history of the legislation providing for these fees shows that most of them were added after salaries were fixed by law.

"With this situation thus laid out before us its evils are apparent. They were:

"(1) The fees allowed were for the ordinary and usual services of the office, for which, presumably, the salary was paid, hence, by a subterfuge, double compensation was obtained.

"(2) The fees allowed were either paid from the public treasury or were of such a nature that they could be paid in advance of the service rendered into the public treasury. It followed that to allow such fees to a public officer, for his own use, was either directly or indirectly to deplete the treasury.

"(3) To be allowed a fee in addition to salary for an ordinary and usual duty was one of the methods by which incumbents could secure increases in compensation during their terms of office."

He next argues that the allowance of such fee as he seeks to have taxed in this proceeding does not fall within the scope of these evils for two reasons: (1) The fee does not come out of the public treasury, either directly or indirectly; (2) the duty for the performance of which the fee is given is "an unusual and extraordinary" one.

If relator's first contention is sound, that the Constitution strikes only at fees the allowance of which would tend to deplete the State Treasury, then its language "and they shall not . . . receive to their own use any fees, costs, perquisites of office, or other compensation," must be construed as though it read, "and they shall not receive out of the State Treasury, directly

or indirectly, to their own use, any fees, costs, etc.'' But even if this latter reading be accepted as the proper construction of the provision, it is by no means clear that the allowance of the fees provided for in said Section 9675 would not still be within its condemnation. Where a corporation is convicted of violating the anti-trust laws, the court is authorized to assess a fine against it in lieu of the forfeiture of its franchise and property. When that method of punishment is determined upon in a given case, the adequacy of the punishment depends upon, among other things, the amount of the penalty to be exacted. If an arbitrary sum is to be assessed for the use of the Attorney-General, that fact will naturally be taken into consideration in determining the amount of the fine. A part of the penalty which would be deemed an adequate punishment of defendant would be assessed as a fee for the Attorney-General, and the remainder as a fine to be paid into the State Treasury. Such course would be inevitably followed in the practical administration of the law. Aside from this, however, relator's construction is entirely too narrow. The depletion of the public treasury is not the only evil of the fee system. That it gives rise to many other abuses is well known. There is no reason, therefore, for not giving effect to the broad and all inclusive language of the Constitution which provided that the officers named shall receive salaries, ''and they shall not receive to their own use any fees, costs, perquisites of office, or *other compensation*.'' It is obvious from this language that it was intended to entirely wipe out the fee system as to the officers named and to put their compensation on a strict salary basis.

Relator describes the duties imposed on the Attorney-General by the statute, in relation to the prosecution of trusts and combines in restraint of trade, as ''unusual and extraordinary.'' If by that he means that the duty is not incident to the office of Attorney-General, and such is the fact, his second position is well grounded.

For while the Constitution says that he shall receive a salary for his services, and that he shall perform such services ''as may be prescribed by law'' (Sec. 1, Art. V), yet it could not have been intended that duties should be imposed upon him which *in no way pertain to the office of the Attorney-General*. It is for the performance of those duties, and those only, that the salary is given him. It would no doubt not be competent for the Legislature, for example, to require the Attorney-General as *attorney-general* to perform the duties of warden of the penitentiary, or superintendent of one of the hospitals for the insane. But if it should designate him as the person to fill either of these offices, and he accepted, a provision for compensating him for the services to be performed in connection therewith would not be obnoxious to the Constitution. Such is the substantial basis of decision in State v. Walker, 97 Mo. 162.

Can there be any question, however, but that the duty of prosecuting trusts and combines under the statute is incident to the office of Attorney-General? Relator argues that the statute imposes upon the Attorney-General a duty entirely different in kind and nature from any that had ever been required of that officer in this State prior to its enactment; that until that time the Attorney-General was only required to represent the State in criminal cases on appeal, while under the statute he is required to initiate and prosecute to a finality a proceeding which is in its essence a criminal prosecution. The question, however, is not whether the Attorney-General had ever been required to perform services similar in character to those imposed by the statute, prior to its passage, but whether the duties enjoined by the statute are incident to his office. [Groesbeck v. Fuller, 216 Mich. 243, 21 A. L. R. 249 and cases cited in note.] It is generally held in this country that the office of Attorney-General is clothed, in addition to the duties expressly defined by statute, with all the powers pertaining thereto under the common law. ''A grant by stat-

ute of the same or other powers does not operate to deprive him of those belonging to the office under the common law, unless the statute, either expressly or by reasonable intendment, forbids the exercise of powers not thus expressly conferred." [6 C. J. 810.] This view has been tacitly accepted, and acted upon, in this State for many years. [St. Louis v. McAllister, 281 Mo. 26; State v. Saline County Court, 51 Mo. 350; State v. Hays, 23 Mo. 287; State ex rel. v. Vandalia, 119 Mo. App. 506.] The Attorney-General of this State is therefore invested with all the powers and duties pertaining to his office at common law, except such of them as have been expressly conferred upon the circuit and prosecuting attorneys; the latter offices have, so to speak, been carved out of that of Attorney-General. [State v. Ehrlick, 65 W. Va. 700.] The duties of the Attorney-General at common law were so varied and numerous that they have perhaps never been specifically enumerated. There can be no question, however, but that the Attorney-General had the power, and it was his duty: (1) By information to bring certain classes of persons accused of crimes and misdemeanors to trial; and (2) by writ of *quo warranto* to vacate the charter or annul the existence of a corporation for violation of its charter. [People v. Miner, 2 Lans. (N. Y.) 396.] If the power and duty which the Anti-Trust Statute purports to confer on the Attorney-General are not identical with powers and duties which he already possesses at common law, they are at least of the same general character, and therefore fall within the scope of the services which "may be prescribed by law," and for the performance of which the Attorney-General shall be allowed a salary and no other compensation of any kind or character.

In suggestions filed by relator with his motion, and in support thereof, he suggests that even if the Attorney-General be denied the right to receive the fee to his own use, still the respondents would not be relieved from its payment, implying that it should be turned into

the State Treasury when paid. In his subsequent briefs and argument this phase of the matter is not touched upon. But whether the contention has been abandoned or not the view implied therein is untenable. As already suggested, the sole object of the statute was to give the fee to the Attorney-General as additional compensation. This cannot be done. Neither can a court by construction give a statute an effect which is wholly foreign to the purpose for which it was enacted. [State v. Railroad, 253 Mo. 642.]

According to the views herein expressed the motion should be overruled. It is so ordered. All concur.

Headnotes 1 and 5:    Constitutional Law, 12 C. J. secs. 205, 230; Headnotes 2, 3 and 4, Attorney-General, 6 C. J. secs. 9, 808 (1926 Anno).