Edward A. WALSH, Respondent,

v.

COUNTY OF ST. LOUIS, Missouri, a body corporate and politic; and James H. J. McNary, as Supervisor of St. Louis County, Missouri, Appellants.

No. 48886.

Supreme Court of Missouri,

Division No. 2.

Jan. 8, 1962.

Motion for Rehearing or for Transfer to Court en Banc Denied Feb. 12, 1962.

William E. Gallagher, St. Louis County Counselor, Richard E. Crowe, Asst. County Counselor, Clayton, for appellants.

Hanlon & Busch, John B. Busch, John F. Hanlon, Clayton, for respondent.

BOHLING, Commissioner.

This is a declaratory judgment action by Edward A. Walsh, County Clerk of St. Louis County, Missouri, against the County of St. Louis, Missouri, a body corporate and politic, and James H. J. McNary, as Supervisor of St. Louis County, Missouri. The Missouri Conservation Commission (hereinafter referred to as the Commission) appoints agents for the sale and distribution of hunting, fishing and other licenses or permits in the State. A "distributing agent" is appointed for a county, city or given area, and sub-agents are also appointed. The distributing agents, but not the sub-agents, are placed under bond. A service fee of twenty-five cents, in addition to the license charge, is authorized for the issuance of each permit. Plaintiff was appointed such distributing agent for St. Louis County. The material issue for determination is whether, under constitutional, St. Louis County Home Rule Charter and ordinance provisions affecting the office of the County Clerk of St. Louis County, plaintiff may retain as his own the $15,762.70 received as service fees for issuing said licenses or permits by himself and sub-agents in 1959 or whether St. Louis County is vested with all the right,

title and interest in and to said fees. The judgment was in favor of plaintiff on this issue and defendants have appealed.

Plaintiff, who was public administrator, was elected County Clerk of St. Louis County on November 4, 1958. He received a form letter, dated November 20, 1958, from the Commission stating the Commission was advised he had been elected County Clerk and we "assume you wish to be appointed distributing agent for Hunting, Fishing and Trapping permits in your county"; and: "If you do not wish to handle the permits please advise at once so other arrangements may be made." Plaintiff, under arrangements had with the Commission, was covered under a blanket bond, effective December 20, 1958, in favor of the Commission in the sum of $50,000.00, and on said date commenced selling said permits as the Distributing Agent of said Commission for St. Louis County.

On January 1, 1959, plaintiff qualified, entered upon and ever since has been performing his duties as County Clerk of St. Louis County.

Plaintiff had ninety-one sub-agents in St. Louis County. Said sub-agents sold approximately ninety-five per cent and plaintiff five per cent of the permits issued in the county. Plaintiff would deliver the permits to the sub-agents as they needed them, or the sub-agents would come to his office for the permit books. The sub-agents would pay for the permit books as they received them or, in some instances, pay on a monthly basis. Plaintiff collected and retained the twenty-five cent service fee for the permits issued by himself and deputy county clerks at the office of the County Clerk. The sub-agents retained ten cents and plaintiff received fifteen cents of the service fee for each permit issued by the sub-agents. In 1959, the year involved, the ninety-one sub-agents received $10,137.80 and plaintiff received $15,762.70 in service fees. Conservation Commission auditors audited plaintiff's records covering the sale of these permits every thirty to forty-five days and reported to the Commission. Plaintiff deposited the moneys received for the permits and service fees in his name as agent for the Commission in two banks in St. Louis County, and made monthly reports and remittances direct to the Commission. He made no report covering these transactions to any county officer, and deposited none of this money with the County Treasurer. The Commission looks to the official distributing agent of a county for remittances and not to the county treasurer.

St. Louis County is a constitutionally chartered county of the first class under Art. VI, § 18, Mo.Const.1945, V.A.M.S., and has more than 100,000 inhabitants. No question is presented with respect to any provision here involved of the St. Louis County Home Rule Charter (St.L.C.H.R.C.) not conforming to the constitutional provisions in said Art. VI, particularly §§ 18(b) and 18(e), or the validity of any ordinance of the St. Louis County Council, which was vested by said Charter with all the legislative power of said county. St.L.C.H.R.C., Art. III, §§ 6, 22. Said Charter provided for the election, et cetera, among other officers, of "seven Councilmen, County Clerk, heretofore known as Clerk of the County Court, * * * and Treasurer" (St.L.C.H.R.C., Art. II, § 3), and that each of the officers above named "shall have all the powers and perform all the duties provided by law, except as otherwise provided by this Charter" (Id., § 4).

Defendants rely on the following provisions of the Missouri Constitution, the St. Louis County Home Rule Charter, and the Revised Ordinances of St. Louis County (St.L.C.R.O.) to sustain the contention that plaintiff is not and St. Louis County is entitled to the service fees received by plaintiff for selling and issuing permits for the Commission while County Clerk of St. Louis County.

Article VI, § 12, Mo.Const.1945, provides: "All public officers in the City of

St. Louis and all state and county officers in counties having 100,000 or more inhabitants, excepting public administrators and notaries public, shall be compensated for their services by salaries only."

Article III, § 22(2), St.L.C.H.R.C., vested the County Council with power: "To provide for the compensation of elective County officers * * *. The compensation of elective officers * * * shall not be increased or diminished during their term of office."

Section 104.150, St.L.C.R.O., provides: "The County Clerk shall receive as total compensation for all services performed by him, an annual salary of Ninety-Six Hundred Dollars ($9,600.00), to be paid out of the County Treasury, chargeable to the General Revenue Fund."

Section 104.390, St.L.C.R.O., provides: "All of the salaries provided in this chapter and those fixed by the Charter of St. Louis County * * * shall constitute the total compensation for all of the duties performed by the designated officers and there shall be no further payment made to or accepted by said officers for the performance of any duties required to be performed by them under the law and Ordinances of this County * * *. All fees, costs and any other monies received or collected by any elective official of St. Louis County shall be paid by him into the County Treasury at least once each month."

And § 303.010, St.L.C.R.O., provides: "Any officer, employee or agent of St. Louis County who shall receive any moneys belonging to the County, or any moneys not belonging to the County, which may be obtained by him by virtue of, or under color of such office or employment, which are to be held, paid out, or transmitted by the County or any officer, employee, or agent thereof, shall promptly deposit all such moneys in the County Treasury; except that any such officer, employee or agent who shall receive any moneys not belonging to the County, which are to

be paid to the United States of America, or to the State of Missouri or any political subdivision thereof, shall promptly pay all such moneys as provided by the laws, ordinances, rules, regulations, or agreements pertaining to said moneys. * * *."

The Conservation Commission of Missouri was created by Amendment No. 4 to the Constitution of Missouri of 1875, by Initiative Petition on November 3, 1936. Laws 1937, pp. 614, 615; Mo.Const.1875, Art. XIV, § 16. This amendment, with additional powers conferred upon the Conservation Commission, is in Art. IV, §§ 40 through 46, Mo.Const.1945, and provides, among other things:

§ 40(a). "The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state, * * * and the administration of all laws pertaining thereto, shall be vested in a conservation commission * * *."

§ 44. "Sections 40-43, inclusive, of this article shall be self-enforcing * * *. All existing laws inconsistent with this article shall no longer remain in force or effect."

§ 45. "The rules and regulations of the commission not relating to its organization and internal management shall become effective not less than ten days after being filed with the secretary of state as provided in section 16 of this article * * *."

It is conceded that the Rules and Regulations of the Commission are controlling on the constitutionally provided subjects. See observations with respect to the powers of the Commission in Marsh v. Bartlett (Banc), 343 Mo. 526, 121 S.W.2d 737, 1. c. 740, 742, 744 [13–16], upholding said Amendment No. 4 against attack; Laws 1945, p. 664, now RSMo 1959, Ch. 252, V.A.M.S.; 81 C.J.S. States, § 66e.

The portion of the Rules and Regulations of the Commission, known as the "Wild Life Code of Missouri," material here, read:

"2.25A. The clerk of each county court and the license collector of the City of St. Louis are appointed as distributing agents for hunting, fishing, trapping and replacement permits in the county, city or area designated by the Commission. Each distributing agent shall appoint sub-agents as the Commission may require to aid in the distribution of such permits, and the Commission may designate additional distributing agents under the same conditions and requirements as apply to the county clerks.

"Each distributing agent, before engaging in the sale of permits, shall enter into a bond * * * payable to the State of Missouri in the sum to be fixed by the Commission. The bond * * * shall be conditioned that he * * * shall accept, receipt for and remit to the State Revenue Department at the close of each month, all moneys derived from the distribution of such permits, less and except the service fee of twenty-five (25) cents.

"B. The total service fee charged for the issuance of any one permit shall not exceed twenty-five (25) cents, which is in addition to the permit fee fixed herein."

We are directed to no case construing Art. VI, § 12, Mo.Const.1945. However, Article V of the Constitution of 1875 related to the Executive Department of the State, and § 24 thereof provided: "The officers named in this article shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not * * * receive to their own use any fees, costs, perquisites of office, or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the State Treasury."

Said constitution also provided for "a State Board of Equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State and Attorney-General" (Art. X, § 18), (five of the seven executive officers named in Art. V, § 1). A statute, enacted in 1872, fixed the compensation of the members of the State Board of Equalization at the same pay per diem as received by members of the General Assembly. RSMo 1879, § 6669; Laws 1872, p. 87, § 12. See RSMo 1939, § 11037.

In awarding a peremptory writ of mandamus to compel payment to the Secretary of State of said per diem compensation, this court said in State ex rel. McGrath v. Walker (1888), 97 Mo. 162, 164, 10 S.W. 473, 474:

"It is not thought, however, that section 24, in its subsequent provisions as to fees, costs, etc., was intended to treat of anything except fees, etc., that strictly pertained to the offices therein mentioned, at the time of the adoption of the present constitution. Thus the attorney general, state auditor, and secretary of state were entitled to certain fees, etc., which fees, etc., were abolished by the constitution of 1875, and are now paid directly into the state treasury. 2 Rev. St.1879, §§ 5597, 5598, 5643. The framers of the constitution must be presumed conversant with that fact, and to have had an intelligent purpose in so framing section 24. It is not thought that section was intended to be extended any further than above stated; it therefore should be limited to the mischiefs and evils it was specially designed to remedy, and should not be so applied as to prevent the payment of the proper compensation for services rendered in another and distinct department of public service." Consult State ex rel. Zevely v. Hackmann, 300 Mo. 59, 254 S.W. 53, 55 [1–5]; Coleman v. Kansas City, 351 Mo. 254, 173 S.W.2d 572, 577.

Section 9675, RSMo 1919, required the Attorney-General to enforce the provisions of the law relating to pools, trusts, et cetera, and provided that the Attorney-General receive, in addition to his salary, a fee of one-fourth of any fine collected, the same to be taxed as costs. In State ex rel. Barrett v. Boeckler Lumber Co. (1924), 302 Mo. 187, 205, 257 S.W. 453, 455 [2, 3], the court held the prosecution of such actions incidental to

the duties required of an Attorney-General, the provision of § 9675 for the allowance of said fee unconstitutional in contravention of Art. V, § 24, Mo.Const.1875; but in the course of such holding expressly approved State ex rel. v. Walker, supra.

Section 4575, RSMo 1919, V.A.M.S. § 246.040 note, authorized county courts, when it appeared because of excessive additional expense incurred in collecting drainage and levee district taxes that county and township collectors should receive more than the one per cent allowed by law for collecting such taxes, to "allow such increase as to the court shall seem just, not to exceed an additional one per cent. of the amount collected." The right of a township collector to retain this additional one per cent under an order of the county court was upheld in Little River Drainage District v. Lassater, 325 Mo. 493, 29 S.W.2d 716, 719 [4–6]; the court holding such action did not contravene Art. IX, § 12, Mo.Const.1875, requiring a law regulating the fees of county officers to be uniform in its operation, or Art. XIV, § 8, Mo.Const.1875, providing that the compensation or fees of no state, county or municipal officer shall be increased during his term of office. The court considered the county and township collectors were agents of the drainage and levee district in collecting such taxes and were not performing the duties of state, county, or municipal officers, stating: "The constitutional inhibition only applies to compensation or fees of officers for performing duties incident to their offices, and has no application to additional duties imposed upon such officers not ordinarily incident to their offices. [Citing cases.]"

Under State v. Walker, supra, and cases approving the holding therein, state, county and municipal officials are not precluded from receiving compensation for services rendered in another and distinct public service.

From 1905 (Laws 1905, p. 168, § 57) until the repeal of § 8913, RSMo 1939 (see Laws 1945, p. 665) our statutes were to the effect that: "County clerks * * * shall issue resident and nonresident licenses" under the Game and Fish law (§ 8913, supra) and authorized them to retain fifteen cents for their services in issuing each license. Consult State v. Moody, 202 Mo. 120, 100 S.W. 619 [2]. Thus, the public policy of the State, evidenced by legislative enactment, was that the added duties were such as to authorize additional compensation for the performance of this service. It also has been the policy of the State under the Game and Fish law and the Missouri Conservation Commission law to have all moneys collected by way of license fees and fines for violations of the law to be paid into the State Treasury. RSMo 1959, § 252.050, V.A.M. S.; RSMo 1939, §§ 8913, 8962, 8963; Laws 1905, p. 168, §§ 57, 66, 67.

That portion of Rule 2.25 of the Rules and Regulations of the Commission with reference to appointing county clerks as distributing agents of the Commission's permits relates more to the "organization and internal management" of the Commission (Art. IV, § 45, Mo.Const.1945) than to the "control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wild-life resources of the state" (Art. IV, § 40(a), Id.) We know of no authority vested in the Commission to compel any county clerk or municipal officer to act as distributing agent of its permits or of any authority vested in a county, a municipality or any county clerk to compel any such appointment by the Commission. Said Rule on its face and as construed by the Commission (see the paragraph of Rule 2.25 relating to the bond of the appointee and monthly remittances to the State Revenue Department, and the form letter mentioned in the statement of facts to prospective appointees) contemplates an agreement between the Commission and the appointee before he becomes qualified as its distributing agent. The rule identifies a person, an official, preferred for the appointment, and, no doubt in counties where the compensation to be received would be unattractive aids the Commission in securing a competent dis-

tributing agent. On the other hand, the allowed compensation makes the appointment attractive in densely populated areas. One accepting the appointment as such distributing agent in a given area acts in his individual capacity and not in his official capacity if he is also the county clerk. Plaintiff became the agent of the Commission for selling and issuing its licenses or permits and performed a service in another and distinct department of the public service than that of County Clerk of St. Louis County. The issues presented are not controlled by St. Louis County Revised Ordinances §§ 104.150, 104.390 or 303.010, the material provisions of which are quoted supra. The clause of § 303.010, St.L.C. R.O., reading: " * * * except that any such officer * * * who shall receive any moneys not belonging to the County which are to be paid * * * to the State of Missouri * * *, shall promptly pay all such moneys as provided by the laws, ordinances, rules, regulations, or agreements pertaining to said moneys" excepts from St. Louis County Ordinance provisions the payment of the license fees collected by the distributing agent and sub-agents of the Commission in St. Louis County into the treasury of St. Louis County. They are to be remitted monthly by the distributing agent to the State Department of Revenue under § 252.050, RSMo 1959, V.A.M.S., and Commission Rule 2.25.

State v. Moody, 202 Mo. 120, 124, 100 S. W. 619 [1], states that under the Game and Fish law (see Laws 1905, p. 158, §§ 57, 66, 67) " * * * all moneys collected by way of license fees and by way of fines for violations of the law are required to be paid into the state treasury and become part of the revenue of the state. The fact that the money so collected is for the use of the game protection fund does not prevent the state from controlling it * * *."

No point is made with respect to the Commission's compensating its distributing agents and sub-agents in this case through the service fees authorized by Rule 2.25.

We approve the holding of the trial court that plaintiff has the right to the title of the $15,762.70 received by him as service fees in his capacity as distributing agent for the Missouri Conservation Commission.

 The trial court awarded the County of St. Louis a judgment for $336.96 against plaintiff to reimburse the County for pay received from the County by deputy county clerks while their services were being used during working hours for plaintiff as distributing agent for the Missouri Conservation Commission. Defendants present the point in their brief that this was error, quoting, "for the reason that such an issue was not raised by the pleadings or upon the trial of the case." Relief by "declaratory judgment" is sui generis and, while not either strictly legal or equitable, its historical affinity is equitable. Liberty Mut. Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 953 [4], 125 A.L.R. 1149; Pittman v. Faron, Mo.App., 315 S.W.2d 836, 839 [3]. Defendants' counterclaim included a prayer: "and for such other and further relief as the court may deem meet and proper." We have said that a court of equity, having obtained jurisdiction, will retain it to do complete justice between the parties. Johnson v. Blase, Mo., 322 S.W.2d 759 [6]; Pittman v. Faron, supra [4]. Consult § 527.120, RS Mo 1959, V.A.M.S.; Rowland v. City of St. Louis, Mo.App., 327 S.W.2d 505, 511 [5]. The law, as we read it, also provides, so far as here involved, that a pleading shall state as a counterclaim any claim, not the subject of any pending action, which the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. See Civil Rule 55.45, V.A. M.R.; § 509.420, RSMo 1959, V.A.M.S.

 The right of appeal is statutory and is granted to "any party to a suit aggrieved by any judgment of any trial court in any civil cause." § 512.020 RSMo 1959, V.A. M.S.; State ex rel. St. Louis Union Trust

Co. v. Sartorius, 350 Mo. 46, 164 S.W.2d 356, 358 [1, 2].

We are not prepared to say that under this record St. Louis County is a party aggrieved by and that the court erred in entering the judgment in its favor on the grounds stated in the point in appellants' brief.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All of the Judges concur.